

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York  10007*

February 27, 2008

**BY ECF**

Honorable Barbara S. Jones
United States District Judge
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007

>      Re:    <u>United States v. Raj Mehta</u>
>             S1 07 Cr. 522 (BSJ)

Dear Judge Jones:

      The Government respectfully submits this letter in advance of the sentencing of Dwayne Mayes (the "defendant"), which is scheduled for Friday, February 29, 2008, at 3:00 p.m.

### Offense Conduct

      As described in more detail in the Presentence Report, between in or about March 2003 to in or about October 2003, Raj Mehta executed a scheme to defraud his employer. (PSR ¶ 6).  During that time period, the defendant worked as a trader at KBC Financial Products, an investment company located in Manhattan. (PSR ¶ 6). The defendant was in charge of managing a portfolio of securities called the "Synergy Portfolio" that was owned by a parent company of KBC Financial Products. (PSR ¶ 6). The defendant's responsibility was to execute trades of the Synergy securities with other investment companies and banks in order to maximize the value of the portfolio.  (PSR ¶ 6).

      In 2002 and 2003, Mehta had an annual base salary of approximately $150,000; the bulk of his income came from bonuses paid at the end of each year based on the performance, i.e., the value, of the Synergy Portfolio. (PSR ¶ 7). During the course of the financial year, KBC Financial Products determined how well the Synergy Portfolio was performing by examining dealer quotes for the securities in the Synergy Portfolio.  (PSR ¶ 7).  In order to facilitate this process, Mehta requested, via e-mail messages, that dealers of various securities provide him with the current price that those particular securities were selling for. (PSR ¶ 7). These broker dealers would then send Mehta an email in response detailing the

current prices of securities in the Synergy Portfolio. (PSR ¶ 7). Mehta then delivered these communications to the trade accounting department of KBC Financial Products. (PSR ¶ 7). On the basis of these calculations, the Synergy Portfolio was determined to have performed very well in 2002. (PSR ¶ 7). As a result, at the beginning of 2003, Mehta was paid a substantial year-end bonus for 2002. (PSR ¶ 7).

In or about March of 2003, Mehta began requesting dealer quotes from certain broker dealers and subsequently erasing the actual values given by the dealers in their e-mails. (PSR ¶ 8). Mehta then inserted fraudulent prices and yield spreads into the e-mail, inflating the apparent value of the Synergy Portfolio. (PSR ¶ 8). A number of the e-mails sent in connection with this scheme traveled outside of the State of New York. (PSR ¶ 8). KBC Financial Products discovered the fraud in October of 2003. (PSR ¶ 8). Mehta was fired shortly thereafter. (PSR ¶ 9).

On August 30, 2007, a grand jury in the Southern District of New York returned Superseding Indictment S1 07 Cr. 522. The Superseding Indictment charged four counts of wire fraud, in violation of Title 18, Sections 1343 and 1346. During the course of the investigation of Mehta's conduct, the Government determined that the difference between the bonus Mehta would have received had he succeeded with the fraudulent scheme and the bonus that he would have received in the absence of the fraud was between $120,00 and $200,000. On November 2, 2007, Mehta signed a plea agreement agreeing to plead guilty to Counts 1 - 4 of the Superseding Indictment. On the same day, Mehta pled guilty before Magistrate Judge Andrew Peck.

## Guidelines Calculation

The November 1, 2002 Sentencing Guidelines apply in this case. (PSR ¶ 14). The base offense level for the defendant's crime is 6, pursuant to U.S.S.G. § 2B1.1(a). (PSR ¶ 16). Because the intended loss amount was greater than $120,000, but not more than $200,000, the offense level is increased by ten levels, pursuant to U.S.S.G. § 2B.1.1(b)(1)(F). (PSR ¶ 17). Because of the defendant's timely notification of his intention to plead guilty, a three-level reduction in the offense level is appropriate, pursuant to U.S.S.G. § 3E1.1(a) and (b). (PSR ¶ 22). No other adjustments are appropriate in this case. The Government therefore concurs with the Probation Department that the total offense level is 13. (PSR ¶ 25).

The PSR correctly calculates the defendant's criminal history category is I, as a result of his lack of any criminal history. (PSR ¶

Based on the total offense level of 13 and a criminal history category of I, the applicable Guidelines range is 12 – 18 months.

## Discussion

The United States Sentencing Guidelines (the "Guidelines") still provide strong guidance to the Court in light of *United States* v. *Booker*, 543 U.S. 220 (2005) and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). Although *Booker* held that the Guidelines are no longer

mandatory, it held also that the Guidelines remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. 543 U.S. at 264. As the Supreme Court recently stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range" — that "should be the starting point and the initial benchmark." *Gall* v. *United States*, — S. Ct. —, 2007 WL 4292116, at *7 (Dec. 10, 2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): "the nature and circumstances of the offense and the history and characteristics of the defendant" (§ 3553(a)(1)); the four legitimate purposes of sentencing (§ 3553(a)(2)); "the kinds of sentences available" (§ 3553(a)(3)); the Guidelines range itself (§ 3553(a)(4)); any relevant policy statement by the Sentencing Commission (§ 3553(a)(5)); "the need to avoid unwarranted sentence disparities among defendants" (§ 3553(a)(6)); and "the need to provide restitution to any victims" (§ 3553(a)(7)). *Gall* v. *United States*, 2007 WL 4292116, at *7.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Courts may not presume that the appropriate sentence necessarily lies within Guidelines range, but "the fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 2007 WL 4292116, at *7 n.6. Their relevance throughout the sentencing process stems in part from the fact that, while the Guidelines are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives," *Rita* v. *United States*, 127 S. Ct. 2456, 2463 (2007), and the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall*, 2007 WL 4292116, at *6; *see also Rita* v. *United States*, 127 S. Ct. at 2464. To the extent a sentencing court varies from the Guidelines sentence, "[it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 2007 WL 4292116, at *7.

Here, the factors described in 18 U.S.C. § 3553(a) militate in favor of a Guidelines sentence. In particular, the need for general deterrence, the need for the sentence to

reflect the seriousness of the offense, and the need to promote respect for the law are implicated in this case. Fraud within the financially industry can be particularly difficult to detect and it is simultaneously very lucrative. These facts underscore the importance of imposing a sentence consistent with the deterrence goals of the sentencing statute. *United States* v. *Heffernan* 43 F.3d 1144, 1149 (2d Cir. 1994) ("Considerations of (general) deterrence argue for punishing more heavily those offenses that either are lucrative or are difficult to detect and punish, since both attributes go to increase the expected benefits of a crime and hence the punishment required to deter it.").

Moreover, none of the arguments made by the defendant in his sentencing submission justify a sentence beneath the Guidelines range. As described in the PSR, the defendant has substantial financial resources. PSR at 12 – 14. The Government agrees with the conclusion of the Probation Department that the defendant has the financial means to secure alternative care for his older family members. PSR at 23. The PSR also describes members of the defendant's family who will be able to fill in any gaps in care during a period of incarceration. PSR at 23. Indeed, it seems likely that very few of the defendants sentenced to incarceration in this district possess resources equivalent to that of Mr. Mehta for assistance with family care.

## Conclusion

For the foregoing reasons, the Government respectfully submits that a sentence within the Guidelines range would be sufficient, but not greater than necessary, to achieve the legitimate purposes of sentencing.

Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney
Southern District of New York

By:      /s/
Randall W. Jackson
Assistant United States Attorney
212-637-1029

cc:    Alan Levine, Esq.
       Daniel Davis, Esq.